## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**AMBER N. M.[1]** ,

        **Plaintiff,**

    v.
                             **Civil Action 2:24-cv-3388**
                                                **Judge Sarah D. Morrison**
                                                **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Amber N. M., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

Supplemental Security Income Benefits ("SSI"). This matter is before the undersigned for a

Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 10), the

Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and

the administrative record (ECF No. 7). For the reasons that follow, the undersigned

**RECOMMENDS** that the Commissioner's non-disability determination be **OVERRULED** and

that this matter be **REMANDED** pursuant to Sentence 4 § 405(g).

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other
disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.       BACKGROUND

Plaintiff protectively filed her SSI application on July 12, 2020, alleging that she became disabled on January 1, 2020. Plaintiff's claims were denied initially and on reconsideration. In June 2021, an Administrative Law Judge ("ALJ") held a telephonic hearing and issued an unfavorable determination. (R. 322–47; 302–15.) After that decision became final, Plaintiff sought judicial review in this Court which determined that the ALJ had failed to adequately evaluate opinion evidence offered by a testifying expert at the June 2021 hearing. The matter was consequently remanded.

Upon remand, the ALJ held a second hearing in December 2023, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 4039–4069.) At that second hearing, the ALJ granted Plaintiff's motion to exclude testimonial evidence from the June 2021 hearing, and instead considered testimonial evidence from two new medical experts and a Vocational Expert ("VE") who appeared and testified. The ALJ then issued a second unfavorable determination on April 3, 2024 (*id*. at 4017–4030), which become final when the Appeals Council declined review.

Plaintiff seeks judicial review of that second unfavorable determination. She contends that the ALJ committed reversible error when evaluating opinion evidence from Paula Powers, LPCC-S ("Counselor Powers"). (Pl's Statement of Errors 7–12, ECF No. 10). The undersigned agrees.

## II.     THE ALJ's DECISION

The ALJ issued the second unfavorable determination on April 3, 2024. At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her July 12, 2020 application date. (R. at 4019.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: asthma complicated by allergic rhinitis; gastro-esophageal reflux disease ("GERD"); depressive disorder; anxiety disorder; and post-traumatic stress disorder ("PTSD"). (*Id*. at 4020.) The ALJ also found that Plaintiff had the non-severe medically determinable impairments of hypothyroidism and alopecia. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's mental health RFC[3] as follows:

> Based on my review of the record before me in its entirety, I conclude that . . . . [s]he can perform only simple and detailed(non-complex) tasks. There can only be occasional interaction with coworkers (but without teamwork), and the public (but without customer service duties). The claimant can perform only tasks without a high production rate or fast pace, such as those in assembly-line or quota-driven settings and can work in environments of no louder than moderate noise, and without invasive (e.g., flashing, glaring, or strobing) lighting, although typical office lights are endurable without restrictions. The claimant is able to tolerate only a few changes in a routine work setting, defined as should not be expected to adapt to the performance of new and unfamiliar tasks as primary work duties w/o orientation, meaning not a self-starter. In addition to normal breaks, she would be off task five percent of time in an 8-hour workday.

(*Id*. at 4023.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 4027.) At step five, the ALJ, relying upon testimony from the VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform, including the representative occupations of hand packager; breading machine tender; laundry worker; folding machine operator; photocopy machine operator; hand packager; nut sorter; document preparer; and toy stuffer. (*Id.* at 4028.) The ALJ therefore concluded that Plaintiff had not been disabled under the Social Security Act since her July 12, 2020 application date. (*Id.* at 4029.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

---

[3] Because Plaintiff's allegation of error exclusively pertains to her mental health limitation, the undersigned's discussion is limited to the same.

4

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As explained above, Plaintiff contends that the ALJ reversibly erred when evaluating Counselor Powers' medical opinions. The undersigned concludes that this contention of error has merit.

### A.  Regulations Governing the Evaluation of Medical Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

### B.  Counselor Powers' Opinion

Here, Counselor Powers completed two check box forms captioned "Medical Opinion Re: Ability to Do Work Related Activities (Mental)." (R. at 4008–09, 4327–28.) In the first one, dated May 26, 2021, Counselor Powers indicated that Plaintiff was "seriously limited"[5] with

---

[4] Because Plaintiff's application was filed in 2020, it is subject to regulations that govern applications filed after March 27, 2017.

[5] The forms defined "seriously limited" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or week." (R. at 4008, 4327.)

regard to a number of abilities and aptitudes for unskilled, semiskilled, and skilled work as well as particular types of jobs.[6] (*Id*. at 4008–09.) Notably, Counselor Powers opined that Plaintiff was seriously limited in her ability to interact appropriately with the general public. (*Id*. at 4009.) Counselor Powers also indicated that Plaintiff was "unable to meet competitive standards"[7] with regard to a number of other abilities and attitudes for these same categories of work.[8] (*Id*. at 4008.) In particular, Counselor Powers opined that Plaintiff was unable to meet competitive standards with regard to working in coordination with or proximity to others; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers. (*Id*.) Counselor Powers additionally indicated that Plaintiff would be absent from work four days a month. (*Id*. at 4009.) In response to questions prompting her to explain the limitations that she endorsed, Counselor Powers wrote: "Due to [Plaintiff's] diagnosis of PTSD and Bipolar [Plaintiff] struggles with emotion regulation. When triggered [Plaintiff] does not manage impulse control well." (*Id*. at 4008.) And in response to a question asking her to describe any additional reasons why Plaintiff might have difficulties working, Counselor Powers wrote: "[Plaintiff] struggles with relationships both personal and professional. [Plaintiff] can have issues with people in authority and can become very oppositional in moments of change." (*Id*. at 4009.)

---

[6] Counselor Powers indicated that Plaintiff was also seriously limited with regard to maintaining attention for two-hour segments; maintaining regular attendance; sustaining an ordinary routine without special supervision; dealing with normal work stress; and dealing with the stress of semiskilled and skilled work. (R. at 4008–09.)

[7] The forms defined "unable to meet competitive standards" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 21 percent to 40 percent of the workday or week." (*Id*. at 4008, 4327.)

[8] Counselor Power indicated that Plaintiff was also unable to meet competitive standards with regard to completing a normal workday and workweek without interruption from psychological symptoms. (*Id*. at 4008–09.)

In the second checkbox form, dated November 20, 2022, Counselor Powers again indicated that Plaintiff was seriously limited with regard a number of abilities and aptitudes for the different categories of work, including that she was seriously limited with regard to working in coordination or proximity to others and maintaining socially appropriate behavior.[9] (*Id.* at 4327–28.) Counselor Powers further indicated that Plaintiff was unable to meet competitive standards with regard to other abilities and aptitudes, including her social interaction abilities. (*Id.*) Specifically, Counselor Powers opined that Plaintiff was unable to meet competitive standards with regard to accepting and responding appropriately to criticism from supervisors; getting along with coworkers; and interacting appropriately with the general public. (*Id.*)[10] Once again, Counselor Powers indicated that Plaintiff would be absent from work four days a month. (*Id.* at 4328.)  In response to a question asking her to explain some of her opined limits, Counselor Powers wrote that "[Plaintiff] struggles with stress and emotional regulation. This results in outburst and inappropriate behavior at work and leading to her calling off or being suspended in many cases." (*Id.* at 4327.) When asked to explain other limits and to include findings that supported them, Counselor Powers wrote that "[Plaintiff] struggles with stress and anxiety and emotional regulations causing outburst in public." (*Id.* at 4328.)

## C.  The ALJ's Assessment

The ALJ first summarized Counselor Powers' opinions, writing as follows.

I note that Paula Powers, LPCC-S, a medical provider completed two Medical Opinions Regarding: Ability to Do Work-Related Activities (Mental). Particularly, the record shows Ms. Powers completed the first opinion statement on May 26,

---

[9] Counselor Powers indicated that Plaintiff was also seriously limited with regard to maintaining attention for two-hour segments; performing at a consistent pace; responding appropriately to changes; dealing with normal work stress; and using public transportation. (*Id.* at 4327–28.)

[10] Counselor Powers indicated that Plaintiff was also unable to meet competitive standards with regard to maintaining regular attendance and completing a normal workday and workweek without interruption from psychological symptoms. (*Id.* at 4327.)

2021. In this statement, Ms. Powers opined that the claimant would be unable to meet competitive standards in areas such as working in coordination or proximity to others without being unduly distracted; completing a normal workday or workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. She concluded by opining that she anticipated the claimant's impairments or treatment would cause her to be absent from work more than four days per month (Ex 33F). Subsequently, on November 20, 2022, Ms. Powers opined in a statement that the claimant would be unable to meet competitive standards of maintaining regular attendance and being punctual within customary, usually strict tolerances; completing a normal workday or workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Finally, Ms. Powers again opined that she anticipated the claimant's impairments or treatment would cause her to be absent from work more than four days per month (Ex 36F).

(*Id.* at 4026.) The ALJ determined that these opinions were not persuasive, writing as follows.

I do not find Ms. Powers's opinion persuasive because the claimant's mental impairments have been relatively well managed throughout the longitudinal record. For instance, on March 25, 2021, she reported her mood was stable and she denied having any mood swings or anxiety issues (Ex 26F, p. 1). Later, on August 16, 2022, she reported feeling good mentally and that she was stable (Ex 40F, p 16).

(*Id*. at 4026–27.)

### 1. The Consistency Factor

Plaintiff appears to concede that the ALJ considered and discussed the consistency factor. (Pl's Statement of Errors 7–12, ECF No. 10). That factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ did not use the word "consistency," but he explained that he found Counselor Powers' opinions unpersuasive because the longitudinal record showed that Plaintiff's condition was relatively well managed. (*Id*. at 4027.) In support of that explanation, the ALJ observed that on March 25, 2021, Plaintiff reported to another

provider, Julie Coulson APRN ("APRN Coulson"), that her mood was stable and that she had no

mood swings or anxiety. (*Id*. at 3923, 40264026–27.) The ALJ also observed that on August 16,

2022, Plaintiff reported to another provider, Bobak Youseffi, PMHNP ("PMHNP Youseffi"),

that she felt good mentally and that she was stable. (*Id*. at 4027, 4580.) Because the ALJ's

observations accurately describe some of the other record evidence (*i.e.*, treatment notes and

findings from other providers), they constitute substantial support for his consistency analysis.

    To be sure, and as Plaintiff points out, the ALJ's discussion was brief. But elsewhere in

the determination, the ALJ also explained that the longitudinal record showed that Plaintiff's

condition was well managed. The ALJ wrote as follows:

> Greater limits are not warranted by the longitudinal record because the claimant's mental impairments have been relatively stable. For example, on March 25, 2021, she reported her mood was stable and she denied having any mood swings or anxiety issues (Ex 26F, p. 1). Other treatment notes from May 2021 show she reported feeling stable on prescribed psychotropic medication such as Lamictal, Buspar, and Trazodone. Additionally, she denied having any mood swings or suicidal ideation. She also reported having good sleep (Id. at p. 26). Subsequently, on August 16, 2022, Mr. Youssefi saw the claimant and noted that she reported feeling good mentally and was stable. In fact, on that same day, the claimant reported her mood was fine and denied having either depressive or manic symptoms. She also denied symptoms such as suicidal ideation or hallucinations, delusions, or ideas of reference (Ex 40F, p. 16). Furthermore, I note that she has been observed with a normal mood on multiple occasions (Ex 35F, pp. 10, 24; 43F, p. 5; 25F, p. 29). Lastly, I note that the claimant is capable of performing multiple activities of daily living such as driving a motor vehicle, caring for her children, preparing light meals, performing household chores, managing her finances, coloring, listening to music, and attending her medical appointments (Ex 4E; hearing testimony).

(*Id*. at 4042–4025.) In this discussion, the ALJ cited treatment notes from Counselor Powers,

ARPN Coulson, and PMHNP Youseffi. The ALJ also accurately noted that Plaintiff had been

observed to have a normal mood on multiple occasions by various providers. (*Id*. at 3915, 4308,

4322, 4685, 4607, 4634, 4646, 4654.) Further, the ALJ accurately described evidence about

Plaintiff's activities of daily living to show that her condition was well managed. (Cites to Ex 4E and hearing testimony needs to be checked) An ALJ's determination must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion evidence where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Accordingly, the ALJ was not required to restate this discussion when assessing the consistency of Counselor Powers' opinion. In any event, and as previously mentioned, Plaintiff appears to concede that the ALJ's consistency analysis was adequate. (Pl's Statement of Errors 12, ECF No. 10).

## 2. The Supportability Factor

Plaintiff nevertheless challenges the ALJ's consideration and discussion of the supportability factor, which requires an ALJ to evaluate the relevance of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . ." 20 C.F.R. §§ 1520c(c)(1). Here, the ALJ did not explicitly use the word supportability. The Commissioner tacitly acknowledges this omission but contends that Counselor Powers failed to provide "much in the way of explanation for her checkbox responses and did not cite to any objective medical evidence," and that an ALJ can reject any opinion that lacks meaningful explanation. (Def's Memorandum in Opp. 13–14, ECF No. 11.) The Commissioner thus appears to suggest that the ALJ's omission was only harmless error. The undersigned is not persuaded.

Unsupported checkbox forms are certainly "weak evidence at best." *See Hernandez v. Comm'r. of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). Courts throughout the Sixth Circuit routinely find that in the absence of explanatory support or reference

to objective findings, such conclusory forms lack supportability. *See, e.g.*, *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases). Indeed, they are so lacking, they can be discounted even where an ALJ has not expressly indicated that they are unpersuasive because they are check-boxes. *Laney*, 2022 WL 2176539, at *6 n. 2 (citing *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018)).

Yet here, the undersigned cannot find that Counselor Powers failed to offer any meaningful explanatory support for her opined limits. Counselor Powers explained that because of her PTSD and bipolar disorders, Plaintiff struggled with emotional regulation, and that when triggered she could not manage her impulse control. (R. at 4008.) Counselor Powers also explained that Plaintiff struggled with personal and professional relationships, and that she could have issues with authority figures and become very oppositional during moments of change. (*Id*. at 4009.) Counselor Powers additionally explained that Plaintiff struggled with stress and emotional regulation and that resulted in outbursts and inappropriate behavior which led to her calling off work or being suspended. (*Id*. at 4327.) Counselor Powers further explained that Plaintiff struggled with stress, anxiety, and emotional regulation and that caused her to have public outbursts. (*Id*. at 4328.) In short, Counselor Powers' explanations referenced Plaintiff's

12

diagnoses and noted how her symptoms could cause the opined limits, particularly the opined social interaction limits. Accordingly, the undersigned is not convinced that Counselor Powers' explanations were so unmeaningful that they rendered her opinion patently deficient such that the ALJ's failure to discuss the supportability factor was only harmless error. *Compare, e.g.*, *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *13 (N.D. Ohio June 4, 2018) (finding that an ALJ did not reversibly err by failing to consider and discuss an opinion found in a checkbox form that failed to refer to a diagnosis or explain how the plaintiff's symptoms might cause opined limits), *report and recommendation adopted*, 2018 WL 3093696, (N.D. Ohio June 22, 2018); *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL 17335383, at *7 (S.D. Ohio Nov. 30, 2022) (finding an ALJ did not err by finding that a medical opinion was not fully supported where the opinion was in a checklist form with no explanation or citations to the plaintiff's medical records), *report and recommendation adopted*, 2023 WL 5349521 (S.D. Ohio Aug. 21, 2023).

Moreover, the undersigned cannot find that the ALJ's failure to articulate the supportability standard was otherwise harmless. The ALJ determined that Plaintiff was limited to occasional interaction with supervisors, coworkers (without teamwork), and the public (without customer service duties). (R. at 4022.) At step five, the ALJ relied on the VE's testimony that a person with Plaintiff's RFC, including these limits to occasional interactions, could perform nine representative jobs that existed in significant numbers in the national economy. (*Id*. at 4029.) The ALJ noted, however, that the VE further testified that a person with a more limited RFC, who could only interact with supervisors one-fifth (*i.e.*, twenty percent) of each workday, could also perform those same nine jobs provided she could endure more interactions during an orientation period. (*Id*.) But Counselor Powers twice opined that Plaintiff would have difficulty accepting

instructions and responding appropriately to criticism from supervisors twenty-one to forty percent of a workday. (*Id.* at 4008, 4327.) Thus, the VE's testimony does not address this opined limit. And even if the VE's additional testimony did account for Counselor Powers' opinion about Plaintiff's ability to interact with supervisors, Counselor Powers also opined Plaintiff would have difficulty getting along with coworkers and interacting with the public twenty-one to forty percent of a workday. (*Id.* at 4008, 4327, 4328.) The VE's additional testimony does not address those limits either. Because the ALJ failed to discuss the supportability factor, the undersigned is left to guess whether the ALJ discounted Counselor Powers more restrictive opinions about Plaintiff's social interaction limits or if he failed to appreciate them.

The Commissioner nevertheless urges that because an ALJ's determination must be read as a whole, a court can resultantly find that an ALJ's determination indirectly attacks the supportability of an opinion, particularly where an ALJ "cite[s] specific statements in [a providers'] own treatment notes and examination findings" that undermine that provider's opinion. (Def's Memorandum in Opp. 13–14, ECF No. 11. (citing *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021).) The Commissioner, however, does not point to instances in the determination where the ALJ included such citations. Instead, the Commissioner devotes much ink to discussing evidence that supports the ALJ's RFC determination, including a medical opinion from another provider, and the ALJ's discussion of that evidence. (*Id.* at 4–8.) There is, nonetheless, a distinction between an ALJ providing support for his RFC determination and an ALJ discussing whether a provider's opinion lacks support. Plaintiff's challenge involves the latter. The undersigned agrees that this challenge has merit.

14

## V.  CONCLUSION and RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the

Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific

Errors. (ECF No. 10.)

## VI.  PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of

this R&R, file and serve on all parties written objections to those specific proposed findings or

recommendations to which objection is made, together with supporting authority for the

objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions

of the R&R or specified proposed findings or recommendations to which objection is made.

Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or

in part, the findings or recommendations made herein, may receive further evidence or may

recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a

waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE